IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| LISA PHILLIPS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 14-5145-CV-SW-ODS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

ORDER AND OPINION AFFIRMING
COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying her application for disability benefits. The Commissioner's decision is affirmed.

I. STANDARD OF REVIEW

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Gragg v. Astrue, 615 F.3d 932, 938 (8th Cir. 2010).

## II. BACKGROUND

Plaintiff was born in January 1957, completed the ninth grade, and has prior work experience as a machine operator. She last worked on January 16, 2012, which is also the date she alleges she became disabled due to a combination of affective disorder, organic mental disorder, and anxiety disorder. Some of these ailments (or their extent) are attributed to an episode of carbon monoxide poisoning she suffered in January 2009. The ALJ discussed the medical evidence in the Record, including records from Plaintiff's treating physicians. These records included (but were not limited to) those from Dr. Ahmed Robbie (a neurologist) and Dr. Christopher Andrew. R. at 14-15. The ALJ also considered the opinion of Steven Akeson, a non-examining, consulting psychologist. Dr. Akeson opined that Plaintiff "retains the capacity to acquire and retain simple instructions, and to sustain concentration and persistence with simple tasks. [She] can adapt to changes in settings that do not require frequent public contact or very close interactions with others in the workplace." R. at 56. The ALJ accorded "great weight" to Dr. Akeson's assessment. R. at 15. Another state-agency consultant, Dr. Aroon Suansilppongse, provided a similar assessment, R. at 310-12, but the ALJ did not mention Dr. Suansilppongse's opinion.

The ALJ's finding regarding Plaintiff's residual functional capacity ("RFC") is a matter for discussion and will be addressed below.

## III. DISCUSSION

### A.

Plaintiff first contends the ALJ erred in his assessment of the medical evidence. In particular, Plaintiff contends that after finding Dr. Akeson's opinion was entitled to great weight the ALJ should have included in the RFC Dr. Akeson's suggested limitations on Plaintiff's ability to interact with other people. This finding – and the corresponding need to include the limitation – was further buttressed by Dr. Suansilppongse's opinion, which was to similar effect. The Court finds, however, that

2

the ALJ included this limitation in the RFC; that is, the ALJ made the finding, but wrote it erroneously. Nonetheless, the Record demonstrates the ALJ's true intent.

In his written order, the ALJ wrote that Plaintiff could "perform a full range of work at all exertional levels but with the following nonexertional limitations: simple, routine and repetitive tasks and instructions; *and no more than frequent contact* with the general public, co-workers or supervisors." R. at 13 (emphasis supplied). Admittedly, on its face, this wording suggests Plaintiff's maximum level of contact with other people is "frequent" – but read this way the limitation makes no sense because there is no greater level of contact with other people than "frequent." Thus, although a limitation of some sort was clearly intended, the words employed admit of no limitation whatsoever. This suggests that a scrivener's error has appeared: either the ALJ meant to say Plaintiff was limited to "*less than* frequent contact" with other people, or he meant to say Plaintiff could have "no more than *in*frequent contact" with other people.

There is further evidence (1) demonstrating there is a mistake in the written opinion and (2) confirming the ALJ's true intent. The ALJ solicited testimony from a vocational expert ("VE") via written interrogatories. The VE was asked questions based on an RFC that included the following limitation: "Claimant can adapt to changes in settings that *do not require frequent* public contact or very close interactions with others in the workplace." R. at 227 (emphasis supplied). The VE responded that Plaintiff could not perform her past work (because of other limitations in the RFC not at issue here). The VE was then asked whether and to what extent the number of jobs were diminished by the RFC propounded and the VE specified the percentage of jobs that would be unavailable because of the limitation on "dealing with people." R. at 228. The VE then listed four jobs Plaintiff could perform and the numbers that would be available given the RFC; the VE further specified that she had accounted for the erosion in the job base necessitated by the limitation on contact with people. Id. The ALJ's opinion incorporated the jobs and the numbers set forth by the VE. R. at 17. This sequence is significant for two reasons. First, the ALJ's hypothetical – which included the limitation Plaintiff argues should have been included – demonstrates the ALJ's true intent. Second, the VE specified the number of jobs available was based on inclusion of this specific limitation – and the ALJ adopted these numbers in his opinion.

3

For all of these reasons, the Court concludes the ALJ found Plaintiff could not have frequent contact with supervisors, co-workers or the public, and simply made a grammatical error or incorrect word choice. This resulted in a sentence that said the opposite of what he meant – but the Record demonstrates what he meant.[1] This is not a sufficient basis for reversing the case because the ALJ's intent – and true holding – can be readily discerned. Cf. Hepp v. Astrue, 511 F.3d 798, 806 (8th Cir. 2008) ("We have held that an arguable deficiency in opinion-writing technique does not require us to set aside an administrative finding when that deficiency had no bearing on the outcome." (quotations omitted)).[2]

B.

Plaintiff's second argument is that the ALJ's improperly evaluated her credibility. The Court disagrees.

The familiar standard for analyzing a claimant's subjective complaints in this Circuit is set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984) (subsequent history omitted):

> While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.

---

[1] At the third step of the five-step sequential process the ALJ found Plaintiff "has some difficulty interacting independently, appropriately, effectively, and on a sustained basis with other individuals," R. at 12, further supporting the Court's conclusion regarding the ALJ's true views on the matter.

[2] Either as part of this analysis, or as a separate evaluation of the harmlessness of the supposed error, the Court makes the following observation: even if the ALJ should have included this limitation in the written opinion, a reversal and remand for that purpose would accomplish nothing. The VE already provided testimony based on the RFC Plaintiff contends should exist, and has already indicated that a person with that RFC can perform work in the national economy.

4

> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> > 1. The claimant's daily activities;
> > 2. the duration, frequency and intensity of the pain;
> > 3. precipitating and aggravating factors;
> > 4. dosage, effectiveness and side effects of medication;
> > 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

739 F.2d at 1322. While the Eighth Circuit has declared that the "preferred practice" is to cite Polaski, the Court of Appeals has also found it sufficient if the ALJ cites the appropriate regulations (which incorporate the same factors as Polaski). See Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007). Here, the ALJ acknowledged the appropriate regulation which incorporates the Polaski factors. R. at 13-14. The ALJ concluded Plaintiff's testimony about her limitations and abilities was not fully credible for a variety of reasons, including: (1) Plaintiff's Function Report, which listed her daily activities, (2) objective medical evidence did not support the limitations she described, (3) the opinions of the medical consultants, (4) the effectiveness of treatment, and (5) Plaintiff's rejection of recommended therapy. R. at 15-16.

Plaintiff argues the ALJ's assessment of the medical evidence is incorrect because there was "objective evidence indicating damage to her brain, possibly from the carbon monoxide poisoning." Plaintiff's Brief at 18. It is true this evidence existed: in fact, the ALJ acknowledged this evidence. R. at 15. However, the existence of evidence of brain damage does not compel a conclusion contrary to the ALJ's because the evidence (including the opinions of Plaintiff's treating doctors) suggests the brain damage was too slight to cause the effects Plaintiff alleges. R. at 15. For instance, in

5

February 2012, Dr. Robbie opined that Plaintiff had "[s]mall vessel disease of the brain, possibly due to prior carbon monoxide poisoning. She now has subtle residual memory problems; this seems to be very mild and she is compensating very well." In that same report, Dr. Robbie "[a]dvised the patient to continue working, not to quit; it is good for her physically and mentally. She may need to find a different job if the work she is doing now is very demanding." R. at 238. Also, in May 2012, Dr. Andrew wrote that Plaintiff "has subjective memory loss. She does fairly well on examination today. Certainly she had a significant episode with her carbon monoxide poisoning. This *can* cause damage to the basal ganglia and result in movement disorders, *however none of those are present.*" R. at 297 (emphasis supplied). Thus, the ALJ was well aware of the fact that Plaintiff had brain damage as a result of carbon monoxide poisoning, but this fact is not automatically disabling. More importantly, this fact does not automatically compel a conclusion that Plaintiff's subjective description of her limitations were correct, particularly when there was evidence suggesting that the brain damage would not account for such symptoms. These are but two examples of medical evidence cited by the ALJ that suggests there is no medical basis for the limitations Plaintiff described; there is no need to detail them all because these two are enough to address Plaintiff's contention that no such evidence existed.

Plaintiff also contends the ALJ improperly relied on her daily activities. In summary, she contends the ability to perform daily activities is irrelevant to the inquiry. The breadth of this argument is dispelled by observing that the ability to engage in daily activities is the very first Polaski factor. When evaluating a claimant's daily activities, the ALJ must consider the nature and quality of those activities and the claimant's ability to engage in those activities over a period of time. E.g., Wagner v. Astrue, 499 F.3d 842, 851 (8th Cir. 2007). Plaintiff has assembled decisions in which, under the facts of the cases at issue, the daily activities in question did not necessarily contradict the limitations alleged or did not suggest an ability to engage in substantial gainful activity, and in that sense Plaintiff's authorities are too case-specific to dictate a particular result here. Moreover, these cases do not state a universal rule that the ability to engage in daily activities is completely unimportant to the inquiry.

6

The ALJ found that Plaintiff could "care for her pet, care for her grandchildren for short periods of time, perform household chores and laundry, perform personal care, and bathing, prepare meals, shop in stores, handle her finances, watch television and movies, perform yard work, go[ ] out to eat and see movies and attend ball games." R. at 16. While these activities are unremarkable and do not definitively suggest an ability to work, these activities are extremely probative in this case because they stand in contrast to Plaintiff's claims that she is "tired all the time," has memory problems, cannot take care of her finances, has more bad days than good days, and on bad days cannot leave her house. R. at 14. As the ALJ said, "[t]he issue of credibility in this case cannot be discussed analytically in absolute terms, but must be measured by degree." Id. The ALJ did not wholly reject Plaintiff's testimony, but engaged in the difficult task of ascertaining "how bad" or (as the ALJ put it) the degree to which the problems Plaintiff alleged actually limited her abilities. This is a factual determination, and the ALJ's determination in this case is supported by substantial evidence.

In addition to observing that the ALJ did not find Plaintiff wholly unworthy of belief, it is worth noting that the ALJ did not rest his determination solely on her daily activities. As previously noted, the ALJ also considered the medical evidence. In addition, the ALJ discussed the positive effects of medication and treatment and Plaintiff's unwillingness to undergo therapy. R. at 15. Having considered the Record as a whole, the Court concludes there is substantial evidence to support the ALJ's credibility determination and his assessment of Plaintiff's RFC.

IV. CONCLUSION

The Commissioner's final decision is affirmed.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: August 14, 2015                UNITED STATES DISTRICT COURT